The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons have in their manner formed a visit before the Honorable of the United States Court of Appeals for the Fourth Circuit. I would like to draw your attention. While the Court is now sitting, I seek the United States and this Honorable Court. Good morning, everyone. First, we thank our host, Virginia State University, and thank the lawyers for coming down here. We picked a nice spring day for you. We did a good job. You're in the engineering building, School of Engineering. So engineering is the science of getting things done effectively. So we'll try to keep in that spirit and hope we can do that today. Counsel, first case. Come forward, Mr. Rosenberg. May it please the Court, I'd like to introduce my student, Jayden Ray. She's going to be presenting argument today with the Court's indulgence. Thank you. Pleased to have you. May it please the Court, this case is about defendants' failure to grant Mr. Banks access to necessary and basic medical care. This Court should reverse the District Court's summary judgment ruling for three reasons. First, Mr. Banks exhausted numerous claims through the Virginia Department of Corrections, or VDOC's, grievance procedure process. Second, even if this Court finds that Mr. Banks failed to exhaust, this should be excused under the well-established exceptions to the Prison Litigation Reform Act, or PLRA. And finally, sufficient evidence was produced to show that there is a genuine issue of material fact for Mr. Banks' Eighth Amendment deliberate indifference claim. First, Mr. Banks did exhaust his administrative remedies for the treatment of his concussion and for the early termination of his dialysis. Three of his grievances were undisputably exhausted to Level 3. This is seen on the record at A136, 240, and 34 to 36. What were those grievances about? Those three grievances, one was from the pain from his concussion, another was from an injury related to his restraints, which was interfering with his dialysis port, and the third was scheduling conflict with his dialysis treatment, and that his treatment had been terminated early because the prison was scheduling his outside medical appointments in conflict with those dialysis treatments. I do understand that he exhausted a lot of grievances, but the actual things he's appealing, right, were the claim that Dr. Gore didn't give him an outside consultant referral. I'm saying that wrong. But one of his claims is against Dr. Gore for not approving an outside consultant visit. Did he exhaust that claim? Mr. Banks did not exhaust the claim related to the outside medical appointment. The other claim that I see in the appeal is the claim against the nurse. Nurse Smith, was that one exhausted? Are you referring to the grievance cited within the second amended complaint with relation to Nurse Smith? Yes. Am I misunderstanding something? I thought that the two claims that were before us on appeal were, one, that Dr. Gore refused to refer Mr. Banks for an off-site neurological consult, and two, that Nurse Smith took him off dialysis early. And I'm asking you whether either of those two were exhausted. Well, the defendant's argument is that those are the only two issues on appeal. But our argument is that limiting Mr. Banks' complaint here to only the second amended complaint is a violation of the liberal construction standard as established in this court and established in the Supreme Court of the United States. But how does that extend to an earlier pleading? I mean, the second amended complaint is the complaint properly before the court. However liberally you want to construe it, that's the complaint, not any earlier versions of the plea. Are you saying that those earlier versions should have effect as well? Yes, that is our argument. And what's your authority for that? The liberal construction standard as established in this court. Does that extend to liberally construing multiple pleadings by a pro se defendant? Well, our argument is that Mr. Banks filed an initial complaint here in this matter. That's right, and it was superseded by this second amended complaint. And it seems to me that that's the operative complaint that we're bound to consider. Well, it was unfair for the district court to limit Mr. Banks, who is an uneducated pro se plaintiff, who had requested representation on this matter three times, but was denied. This is on the record at 147, 170, and 303. Let me ask you about that. Did you preserve that claim? No, his denial of an attorney was not preserved here on appeal. So why are we talking about it? Because it goes to show that the application of the liberal construction standard is applicable here because Mr. Banks was denied an attorney and did not understand when the district court told Mr. Banks that his second amended complaint would be the sole and only complaint in this matter and would therefore supplant all other complaints here. He did not understand that that was the standard and that he would only be limited to the claims brought in the second amended complaint. But even if this court were to only consider the second amended complaint, other claims can still be brought here on appeal because Mr. Banks made broad constitutional allegations similar to the statements made in Lowry v. Bennett, a case from this circuit, where a pro se inmate alleged only a broad constitutional violation instead of very specific claims. But yet this court still allowed that inmate to continue with the more broad constitutional violations and the smaller, more developed claims that were developed on appeal. And here Mr. Banks and the appeal pleadings here are based on all the exhibits contained here on the record. So all of the information here is contained in the record. It was things Mr. Banks had already attached as exhibits to the first complaint. And it is not traditional for a court to exclude exhibits. So yes, a second amended complaint can be, of course, be considered the sole complaint in the matter, but the exhibits still remain on the record. And all of Mr. Banks' claims being brought here are contained within those exhibits, which were attached to Mr. Banks' first complaint. And he should not be required to reattach all of those documents to be then able to reference those here. So are people supposed to figure out whether they're being sued by going back and looking at the exhibits that were attached to a former complaint? Do I have to put defendants on notice that they've been sued? Well, Mr. Banks actually pleaded in his second amended complaint that Dr. Gore showed deliberate indifference to a serious medical condition. Oh, I agree. I'm sorry. I totally agree that Dr. Gore and Nurse Smith are on notice. But you seem to be saying anyone who was referred to in an exhibit attached to the prior complaint, that that claim also can be raised now on appeal. Is that not your position? Our position is more narrow than that, Your Honor, in that all of Mr. Banks' claims are included here in the second amended complaint and provide reference to the exhibits already contained on the record. So therefore, there was notice because that second amended complaint provided sufficient reference to all the documentation already attached. So we're not bringing new arguments here. We're simply relying on things that were already in that complaint and already referenced therein. And when you say that, do you point to the portions of the second amended complaint that actually refer to these earlier claims? Yes. Within Mr. Banks' second amended complaint, he makes broad allegations against Mr. Gore again to the deliberate indifference. So that therein is a very broad statement, of course, saying that Dr. Gore was deliberately indifferent to a serious medical condition. That includes both Mr. Banks' concussion and his dialysis. Are you saying that just because it's so broad that anything that has to do with deliberate indifference with respect to serious medical needs is encompassed in that statement? We're arguing that under liberal construction and in viewing this second amended complaint as something filed by a pro se plaintiff, again, who was denied counsel on multiple times and was very ill, viewing that under the lens of liberal construction and under precedent already established in this court, again, in Lowery, that a pro se inmate's broad constitutional violations can therefore be sufficient to allow claims to be brought here on appeal. And in addition, under the second amended complaint on the record at 161, Mr. Banks also refers to the initial incident of his concussion occurring, so has brought to the attention that the concussion occurred, and then therefore follows it with a description of several symptoms that he suffered from. So his continuing development of hearing loss, dizziness, blurry vision, and chronic head pain. So he did sufficiently include within the second amended complaint other grievances which were filed. You may have talked about this at the beginning and I missed it, but did you say that, as I understand it, there's a separate claim for lack of medical treatment related to his hepatitis C and the lack of a particular drug, harvoni, or something like that, as I recall. Did you say that he adequately exhausted that claim? We did not include that claim here on appeal. We're pursuing his concussion treatment and his dialysis. Okay, so you're waiving, you forfeited that claim? No, Your Honor, we did not waive that claim, but we are saying that Mr. Banks has pursued his concussion treatment and dialysis. The grievances related to those to full exhaustion should, therefore, be allowed to pursue his deliberative claim. So what's your position with respect to the hepatitis C claim? Our position with relation to that claim is that it should be viewed under the liberal construction standard and that Mr. Banks was just continually grieving these instances in which Dr. Gore and Nurse Smith failed to provide him with adequate medical care. Were they unnoticed that they failed to provide him with adequate care with respect to hepatitis C? Well, yes, Your Honor, because that was contained within the second amended complaint. The allegations with relation to... You have to exhaust administratively before you file the claim. What I'm asking you is whether or not he administratively exhausted that claim before filing his lawsuit with respect to that claim. Mr. Banks did not fully exhaust the grievances with relation to the hepatitis C treatment. So why isn't that, then, forfeited, waived? Because Mr. Banks's failure to exhaust his claims with relation not only to that claim but to his dialysis and concussion treatment can be excused or even found to be fully exhausted because Mr. Banks filed a series 13 emergency grievances with relation to both his dialysis and concussion treatment. And in 2013, when Mr. Banks was incarcerated, the Virginia Department of Corrections grievance procedures provided no way to exhaust these emergency grievances. So the grievances provided examples of how to file these emergency grievances, but there was no way in which exhaustion was detailed. So you're arguing under Ross v. Blake that it was unavailable? Well, we're arguing, yes, Your Honor, but in addition that these emergency grievances can be considered exhausted because filing the emergency grievance itself wasn't final because there was no further procedures within the Virginia Department of Corrections to allow Mr. Banks to exhaust them. So they were exhausted because no procedure existed. But if the court were to proceed under the Ross v. Blake exception, the emergency grievances can be considered exhausted under Ross Prong 1, which is the procedures operate as a simple dead end because there was no procedure in place. So Mr. Banks never had the opportunity to exhaust these 13 emergency grievances because the procedure didn't exist and he continued filing these grievances, but yet the prison never corrected this failure and never told him again that there was another way to exhaust. In addition, Mr. Banks does not have to exhaust every continual violation of his constitutional rights, and the PLRA does not require this. Under the case of Morvey Bennett established in this circuit, which cited with approval Johnson v. Johnson, a case coming out of the Fifth Circuit, in Johnson v. Johnson, a prisoner was repeatedly sexually assaulted and appealed some but not all of his grievances, and the Fifth Circuit there excused exhaustion with relation to those other unexhausted sexual assault claims because he had fully exhausted some of them. And here in Morvey Bennett, which cited again Johnson with approval, Mr. Banks can be seen to exhaust because he did undisputably exhaust grievances with relation to both his concussion and dialysis treatment. Defendants even concede that exhaustion existed with relation to Mr. Banks' March 14, 2014, dialysis conflict grievance on the record at 135 and 235. And who is the plaintiff suing with respect to that one? With respect to which plaintiff? The one that you just said was exhausted, the dialysis claim that you said. Who is that claim against? That claim is being brought against both defendants. Against Dr. Moore? Dr. Gore and Nurse Smith. Dr. Gore, I'm sorry. And Dr. Gore is being sued for the termination of the dialysis? Yes, Dr. Gore and Nurse Smith. And where is that in the complaint? I'm sorry, within the second amended complaint? Well, again, under the doctrine of liberal construction, Mr. Banks, again, unrepresented, a very sick man, an undisputably very sick man. I'm sorry, is your answer, it's not in the complaint, but under the doctrine of liberal construction, we should read it into the complaint? Well, Mr. Banks did include his dialysis treatments within the complaint. But not against Dr. Gore. I mean, defendants have to know what they're being sued for. How would Dr. Gore know that he needs to come into court and defend against the termination of dialysis? Because Dr. Gore was present in the clinic, and he was very aware of the fact that Mr. Banks was very ill. Right, but he might think, like, phew, good thing nobody sued me for that, because I don't see it anywhere in the complaint. Well, Mr. Banks did allege those complaints within his first complaint, which, again, he did not understand was to be the sole and only complaint in this matter. And he did name Dr. Gore the first complaint, did he not? He did, he did, Your Honor. In relationship to all of his constellation of problems and complaints about medical condition, correct? Did he not? I'm sorry. The whole idea of incorporation is based upon that the first complaint gave notice, correct? So I'm asking, what's the extent of Dr. Gore's notice in terms of his relationship to the alleged lack of treatment? Following up to Judge Harris' question, it's a very important question for you, because you're saying it would be unfair not to consider that to be notice, notwithstanding it wasn't in the second amended complaint. So you need to give how wide a swath there was that he would have been, at least in a reasonable person would be, a notice that there would be, withstand notice that this would be a question in the case. So I'm asking you, in the first complaint, where is that? That's Dr. Gore. Is it broader than just the post-concussion relationship? Well, within the first complaint, Your Honor, Mr. Banks alleged a series of instances basically describing his grievances and describing every instance in which he was denied the dialysis treatment as well as the treatment for his concussion. Right. Well, you need to say that, because that's what Judge Harris, those are important questions she asked you, okay? Thank you, Your Honor. But, yes, again, under the doctrine of liberal construction, Mr. Banks still prevails here. I mean, even if you were to only rely on the second amended complaint, Mr. Banks still prevails here because he does provide broad enough allegations there that do still put defendants on notice of these claims. Proceeding to the deliberate indifference claim here. That red light is not a suggestion. Oh, I'm sorry, Your Honor. May I conclude? You may. This court should reverse the district court summary judgment ruling for the recent state of affairs. Thank you, counsel. Mr. McNellis. Good morning, Your Honors. My name is Ed McNellis. I'm here along with Ms. Elizabeth Muldowney. First of all, I want to thank the court. I have a daughter who's a third-year law student, the same age as Ms. Rhea. And, Ms. Rhea, if you don't have a job offer yet, send Ms. Muldowney and I a CV, a resume. May it please the court, this case really is simply about the operative complaint, as Judge Diaz pointed out, is the second amended complaint. If you read Judge Hilton's order from June 22, 2015, which is at A151 to A156, one of the most profoundly deferential orders, I submit, that I've ever seen a district judge write in a pro se case. And I'm sure you're familiar with that order. Judge Hilton literally walked Mr. Banks through, here's how you have to draft your complaint. He provided the way that the complaint should be styled and titled. He gave what I would call a Section 1983 in a nutshell, including an explanation of supervisory liability under 1983 under the Shaw decision, the Four Circuit's decision in Shaw. The court bent over backwards to help this pro se litigant. And the reason the court did that is the original complaints that Mr. Banks is relying on to say that it's all in there, is basically the argument, it's all in there. They were scattershot. They didn't identify who did what. They were just essentially a scattershot grouping of allegations about various medical issues. And that's not appropriate pleading. It doesn't give the defendants fair notice of what they're defending. And Judge Hilton appropriately recognized that that wasn't right and bent over backwards to help Mr. Banks. So Mr. Banks did file the Second Amendment complaint. And I would submit the Second Amendment complaint is fairly focused and it focuses on… Let me ask you about the concussion claim because I think that's the one that I have a concern about with respect to exhaustion. It seems to me that Mr. Banks made an effort to exhaust that claim. And if you'll pardon the pun, he literally kept banging his head up against the wall trying to get treatment with respect to that particular ailment to no avail. So how is it that you can legitimately say that he failed to exhaust that claim? Well, Your Honor, the position I believe that they're advancing and the courts bring to my attention is, well, he complained about the concussion, so therefore anything that they can argue had some relation to the concussion. For example, a neurology referral a year and four months later, which is what this complaint is referring to, that that somehow falls under the ambit of the concussion, and therefore it was exhausted. You put your hands in quotes like that, how is that far-fetched? You had a concussion, the onset was the time of the fall, and a year and a half later you're still actively symptomatic. I mean, people have walked around with subdural hematomas for months. That's not far-fetched at all to be symptomatic after a year and a half. So I don't see that as if like he cut his finger and a year later he's saying that it's still bleeding or something. Well, Your Honor, I would seize upon a statement that Ms. Rhea made. One of her early statements was, Mr. Banks did not exhaust the neurology referral. She said that. It was, I thought, a very frank concession. I wouldn't call it a concession, but she'll have a chance to stand up and say otherwise. But three separate physicians said, this man needs a neurological consult. Physicians, normally in these cases where, you know, it's the lone inmate crying in the woods, I need something. But a physician said, this man needs a consult to a neurologist. And Dr. Gore says, no. And who could, how could you really exhaust anything beyond that? The medical director tells the physicians who see him primarily, these are the PCPs, primary care physicians, no, no, no. So where does he go practically? Your Honor, that's a segue into where, I'm not hanging my hat on the exhaustion. The exhaustion, I will concede that's a fuzzier issue. Actually, before you leave exhaustion, I just, I have, just as a factual matter, so if the medical director, Gore, says you don't need this consult, who is the grievance to? Who gets to review that? Well, the grievance will be reviewed by the warden ultimately, and then the regional director above the warden if you appeal it. The regional director, okay. And there's a medical director. His name, he's my client. I'm not Gore. Dr. Amanat. Okay, so Dr. Gore is not, he's the medical director of the prison, is that right? Yes. Then there's a medical director of the whole thing. I am literally just trying to get an answer to the factual question. There is, in fact, someone above Dr. Gore who had authority to review this. Yes, Your Honor, and to be candid, the first level review would be Dr. Gore, and Dr. Gore may not be as objective about reviewing his decisions as others, but if you appeal it, it goes up to Richmond and Ardmore, whatever, where the headquarters is, and there are physicians at the VADOC who review that. How would he know that? All he's looking at is two physicians. One said yes, and that physician's boss said no. How would he know that there's somebody else up there in the atmosphere to say, I can look down and, I mean, the people who are the closest people, it's like going further and further away. The closest person to him who sees him every day says, you need this. The person who's above them says, no, you don't need it. So you mean that person who's further away, someone more attenuated is going to be able to review that? It's not practical. Well, Your Honor, let me just segue to the issue that is my leading argument, our leading argument, and that is the merits of the case, not the – Okay, fair enough. You want to go to the merits? I mean, if the court takes the position – No, that's fine. I just have a factual question. All right, go ahead. Let me just ask you one other question about exhaustion with respect to what I thought was a medical malpractice claim related to dialysis, not a deliberate indifference claim. If, in fact, he alleges a medical malpractice claim, then he wouldn't be required to exhaust under the PLRA, right? That's correct, sir. There's a pendent state law claim. There are several pendent state law claims. And to be frank with the court, that is perhaps the most ambiguous issue in this in that Judge Hilton's order does not specifically address the pendent state law claims. And frankly, that's the biggest concern I had from this argument. The one thing that saves the court from having to get into that is the concession in the Second Amendment complaint very clearly by Mr. Banks on page A – let me see. It is on page A-165 of the record. And in the complaint, which he's not required to do – I'm a state malpractice defense lawyer. That's what I do. He says, There is no need for expert certification because it is common knowledge for the jury that the defendant's actions constituted medical malpractice. Virginia Code Section 8.01-20.1 requires a plaintiff, before serving a complaint, to have an opinion from an expert qualified in the standard of care in the same specialty as the defendant or related specialty. In this particular case, Mr. Banks is saying in his complaint, I don't have one. I don't need one. Now, the only exception to needing an expert is the Beverly Enterprises v. Nichols case from the Virginia Supreme Court and his project. That was my case back in 1994. It involved a resident in a nursing home who was on a pureed diet, and they gave the gentleman a hot dog, and he choked. And we argued that they didn't have an expert. The court said, You don't need an expert to know that you don't give somebody on a pureed diet a hot dog. That was a very limited exception. And all the cases that have followed that case say you need an expert unless it's something so obvious, like giving a patient five times the amount of medication that was prescribed or something of that nature. In this case, the allegations are a failure to complete dialysis. They are an allegation of a failure to refer for a neurology consult. Well, you would need a neurologist to talk about what a neurology consult would have yielded in terms of medically beneficiary treatment for Mr. Banks. So I think in dealing with the pendent state law negligence claims, Your Honor, I think you can hang your hat on 801-20.1 in his admission in the second amended complaint that he doesn't have an expert. That's our position on that. But with respect to the underlying merits of the case, the only evidentiary record before the court is the undisputed statement of facts that were submitted by Dr. Gore and Nurse Angela Smith, which were adopted in Judge Hilton's opinion. He essentially adopts all the undisputed facts as a basis for his opinion. And those facts are, with respect to the neuro consult, that Dr. Gore evaluated Mr. Banks himself. He performed a neurological examination, which was normal. And he determined that what Mr. Banks needed was to be followed for four months by the actual physicians in his pod or his unit. And if there were any problems, we can reevaluate and consider a neurological assessment or referral. And that never apparently occurred, that there were problems. With regard to the hep C aspect and the kidney stone aspect, there's evidence in the record, Dr. Gore explains that Harvoni, which is a direct acting antiviral medication, it's a relatively new medication. So at this stage, we're supposed to accept that as true? Yes, sir. I would submit you, for purposes of an evidentiary record, yes, sir. Yes, sir. And then with respect to, there's something about him needing a bile duct surgery or something, and Dr. Gore explains that that really wasn't true. There was no recommendation for that. And then with respect to Nurse Smith, she, of course, says, I have nothing to do with the dialysis. Dialysis is actually provided by an independent contractor. And in the record, if you look at the dialysis documents, the ones that document that the dialysis was terminated 30 minutes early because the water was shut down, at A142 and A143, those documents are from an independent contractor. They're not from the VADOC. They're not from Nurse Smith. Her name's not even on that. So her position is, I had nothing to do with the dialysis. It's provided by an independent contractor. And the reason I emphasize all this, Your Honors, is on the merits of the case, the facts before this court, which is the undisputed facts in the summary judgment motion as adopted by Judge Hilton in his opinion of, what was the date of his opinion? I submit that there's no way that a jury could find deliberate indifference against Dr. Gore or against Nurse Smith. And I would point the court to a case we didn't cite in our brief and we should have, and that's this court's decision in Jackson v. Lighting. That is a 2014 decision. It involved a family practice doctor working in the North Carolina Department of Corrections. A prisoner came in who had congestive heart failure based on a diagnosis from a cardiologist. And the family practice doctor who, I guess Dr. Lightsey, assessed the patient and said, no, you don't have congestive heart failure. I think you have atrial fibrillation.  He changed the medication regimen from one for congestive heart failure to one for an arrhythmia, for atrial fibrillation. Two days later or some, I don't know if it was two days, sometime after, the plaintiff had a serious heart attack. He survived. And this court looked at the case and said, that was a medical judgment by Dr. Lightsey. And while it might have been a really bad medical judgment, it doesn't raise constitutional issues because this court has recognized, as courts have throughout the country, that questions of medical judgment do not create constitutional claims. So under that Lightsey and the facts of the case, we submit that there is ample evidence. And the only evidence in the case is that there was no deliberate indifference to Mr. Banks' medical needs by either Dr. Gore or by Nurse Smith. And as much as I said, I've got 7 minutes and 30 seconds. Are you saying that the district court granted summary judgment on the post-concussion based on the merits, or was it because the penalty was fair to exalt? No, Your Honor. I respectfully submit both. Both. And I refer the court to. What does it define? Was it defining a lack of causation? No, sir. It said. I'm going to find it right now, Your Honor. I just dropped my pen. Excuse me. First of all, the court does set forth. Well, Mr. Banks didn't have a chance to. He didn't really file an opposition, right? No, sir. He didn't file an opposition. He's pro se. He probably needed a lawyer, didn't he? Sir, I don't know. Mr. Banks wasn't. But all that to do, you said the district court gave him maybe having a lawyer might have been even better than a one-on-one in 1983. Your Honor, as I understand it, that's not an issue before the court. They're not raising it. Just ask me a question in terms of talk about what he should have known, what he had. Remember, you're the one that opened the door. You said all that tootley. I can't imagine him not knowing everything. You opened the door. I'm asking you the question. Wouldn't it have been better rather than doing that one-on-one in 1983 and said, give him a lawyer? Obviously, he needed one because I think it begs the point that he wouldn't have to have gone so much on and on and on explaining it. So you answered the question that he needed one right there in the record, don't you? Well, Your Honor, he may have needed a lawyer. He probably did. But I would submit probably every party needs a lawyer. No, but here it's a question of causation because you're saying that not having a neural consult, well, you can't prove that it would have made any difference. That's causation. Is it malpractice? And you cited cases back in 1994. You're a very learned counselor. This is your area of practice. But for a person who's already a ward of the state, an inmate, facing this, it would seem to be a case that you need counsel, wouldn't you? Your Honor, all I can say is I don't make those decisions. I don't – I'll be honest. I don't know what the criteria are for the courts to make it. So many of these cases, you know, people in prison, you know, I mean, you know, it's almost like, you know, they've done something wrong in there, but they're not children of a lesser God. I mean you have to treat them with some decency. I mean you say, okay, well, how can you prove that you needed a – what, three physicians said so that you needed a counsel. How are you going to prove that – I guess your argument is that it would have made any difference. Yes, sir. Causation, right? Even if there was a problem that was exacerbated or continued long as necessary, you can't show that it would have made a difference if they had given you a counsel. Aren't you arguing that? Well, that certainly is – that is a part of my argument. Yes, sir. And a very fine argument and one that's very sophisticated. It is a very sophisticated argument that a lot of people, you know, wouldn't kind of understand, let alone someone who's already in prison in terms of discovery. Was there liberal discovery allowed here? Sir, there was no discovery allowed. Right. Which in the Eastern District, they don't allow discovery with the pro se cases unless – The Eastern District is in the United States where the Constitution covers it, doesn't it? Yes, sir. Well, I'm not – I'm not here to defend the Eastern District, sir. No, I'm not here either, but most cases in summary judgment before you – a person's case goes out the window, they get a chance to discover. Put, you know, put the doctor on. Why did you? You had – you said that follow on and see what happens, but three separate times, independent. It's not just the same physician, but different physicians saying, this man needs a neurological consult. He's actively symptomatic for things that relate to post-trauma brain trauma, and you don't give him one, and then he comes into court. You say, well, are you going to prove you really needed one? I mean, so in a sense, courts have some sense of justice required, and that's why the Supreme Court in Ross says exhaustion is not necessary but is not available. Yes, sir. Well, just to go back to what the court just said about the three doctors, I go back to Lightsey, and Lightsey was a cardiologist and a family practice doctor. And the family practice doctor's disagreement with the cardiologist was deemed to be medical judgment, and this court found that's not a constitutional issue. Can I – I want to clarify because I'm not sure – now I'm not sure I understand your argument on the merits. I thought your argument on the merits was not about causation. I thought that goes to the state malpractice claim. But I thought your argument on the merits of the 1983 claim was causation or not. I don't care. Not like that. Causation or not is not relevant. What matters is that this doctor exercised judgment, and that's not going to rise to the level of deliberate indifference even if there was causation. But am I misunderstanding that? Does your argument depend on this causation point under 1983? Absolutely. Your Honor, the argument you just articulated, I attempted to articulate it, and I didn't do a very good job, but that's – what you just said is our position exactly. Under 1983. Under 1983, given these facts, there is no jury, no reasonable jury could find that there was deliberate indifference on the part of either Dr. Gore or Nurse Angela Smith. As a secondary component of that in the state law negligence claim, causation would obviously be important, and it is important in 1983, but that's not what I'm hanging my hat on. But that's a malpractice claim, and this is a deliberate indifference claim. Yes, that is correct, Your Honor. But the difference is the – there was a final point on that. It's not enough to say in normal cases you could say, well, I did all I could do in terms of that. But here you have a physician who is not the primary care physician has the authority to actually veto. He vetoed – it's different. You have one lawyer. I saw them. You have Manuro. But he's vetoing someone else's independent medical opinion. That's not different than just saying – I can just say, oh, I cancelled out because I saw Medea for five minutes, maybe. I don't know how long in neuroconsult. Because neuroconsult could be follow my finger. I know how that works. A neuroconsult is this. Oh, I'm thinking, okay. Did you feel this? Did you feel that? That's neuroconsult. I mean, that can – That would be malpractice neuroconsult, Your Honor, respectfully. I don't know whether it is or not, but it is a subset. We don't know – do you know what it was, the full amount? Yes, it's documents. It's a complete neuro – Okay. And so – but he overrode an independent physician who is his primary care physician for prisons as he goes. Right? Three of them. Three separate ones. Right. And you're saying just as a matter of law, as law – because we're talking about summary judgment, as a matter of law. Oh, no juror can say, no, no, no. You just – as director, you know, you're the gatekeeper. Like, I mean, how many people are going to get through the gate? Not this one. I'm not suggesting that, but just hypothetically, all this costs money. Yes, sir. And Virginia locks up a lot of people that are in prison. And so everybody who needs a consult has a ka-ching, ka-ching, isn't it? Your Honor, I don't know about the ka-ching, ka-ching, but I know that Dr. Kaur exercised his own independent medical judgment. But they were asking for an outside consult. Yes, sir. And they recommended someone outside the prison system needed to see this man. Yes, sir. And that would have to cost some money, wouldn't it? Your Honor, I suspect it would. It certainly would probably cost money. I'm not – I'm just saying hypothetically. I'm not accusing anybody of anything, but I'm just saying we're talking about jurors look at the whole picture. Yes, sir. And I will tell you real quickly – I don't have much time, Your Honor. Doctors disagree with each other all the time. I just tried a case in Portsmouth where a doctor wanted to have a patient admitted. An emergency medicine doctor wanted to have a patient admitted to the hospital. The hospitalist said, no, I'm not going to admit the patient, and the patient had a stroke. You know what the difference is, though, and that's a really sad case, but that hospital is not the end of somebody going down the street to another hospital. Mr. Banks didn't have that luxury that he could say, okay, you won't do it. I'll go to the next hospital. That's a big difference. Yes, sir. But Mr. Banks could have grieved and could have gotten Dr. Amanat to disagree with Dr. Gore. So there was – Is it clear in the – that he was really independent? How is that explained? It says unit. You can call it a unit. Isn't that unit in his title? I'm the chief judge, and I'm asking you a question. Yes, sir. You can always talk. So it wasn't unit in his title? Unit, direct unit? It said unit. It didn't say statewide in Richmond over top of all that. It didn't say unit. Well, you know the record. What was the title of the person who you said could overrule Dr. Gore eventually? The person who can do that? No, the person. Title. Oh, the title. It's the medical director? What is it? Health services director. Health services director. The whole thing? Health services. Health services director. Yes, sir. Yes, sir. And if that's posted for somebody, where would he have that? Where would he be able to find that information? I don't know. That's what I thought. Your time is up unless you want to – Can I just ask a follow-up with respect to that? Did Dr. Gore actually veto the consult or simply defer the consult until he could get further information? He deferred it. He did an assessment and said, let's follow him for four months, and if anything happens, we're going to do serial examinations. We can revisit. What happened was another physician said he needs it. Not after that, Your Honor. Okay. Third time will be the charm, so we need it one more time. Well, the other doctors never again recommended it. Well, I know. I guess sometimes you hit your head against the wall. A lot of nothing. Soon you'll say it's called condition failure. Yes, sir. Your Honor, my time is up. Thank you very much. Thank you so much. Israel, you have some time reserved. May it please the Court? I have a few quick points on rebuttal, Your Honor. First, clearly there are issues of fact that still need to be determined here in this case, and therefore this case must go back to the district court who only gave Mr. Banks only a one-sentence resolution for his deliberate indifference claim. That is clearly not a sufficient analysis to support a summary judgment ruling. Secondly, defendants have conceded that fair notice is the standard here. The complaint and the second amended complaint both provide enough notice for the defendants to support all the arguments brought here by Mr. Banks on appeal. If we ignore the initial complaint, do you still think all the claims survive? Yes, Your Honor, because, again, under the established liberal construction standard and the case of Lowry, Mr. Banks alleged broad constitutional violations, which would allow this court, in applying liberal construction, to allow Mr. Banks to proceed. He also made reference— Can I ask you a question about your earlier point? What are the disputed issues of fact that you say are sufficient to survive summary judgment in favor of your claim? I'm sorry. Are you—I'm sorry, Your Honor. Are you asking— You said that there are sufficient issues of fact that warrant further consideration of the case, and I'm asking you, what are those disputed issues of fact? Whether or not Mr. Banks did exhaust some of his grievances, that is a question of law that needs to be determined. He did undisputably exhaust three grievances. But you said there were questions of fact. Questions of fact with relation to how these grievances played in here, as well as the deliberate indifference claim. That is where most of the factual issues are, in that— Sorry. Go on. I just wanted to make sure you said, yes, under the merits, deliberate indifference, what are the issues of fact? Yes. Under deliberate indifference, the issues of fact relating both to Mr. Banks' concussion and his dialysis are that Mr. Banks was denied medication multiple times. You know, it's a question, of course, whether deliberate indifference— Those were his allegations, but the question is, what is left for a jury to try, particularly with respect to this issue of the concussion? If you accept at face value Dr. Gore's affidavit that he deferred treatment until he could get further information, that's not in dispute. So what is there for a jury to try? The question is whether or not what he did, as alleged in the affidavit, arises to the level of deliberate indifference. So what do we need a jury for? A jury would be used here to determine whether Mr. Banks' claims of deliberate indifference with relation to his concussion and his dialysis treatment actually meet the standard of deliberate indifference. Okay, so what are the facts in the record that would allow a jury to find that Dr. Gore knew subjectively that what he was doing would put Mr. Banks at an excessive risk of harm, that it was not, in fact, the case that Dr. Gore believed you could wait a couple of months and defer treatment in an exercise of his medical judgment, which may have been wrong, may even have been negligent. But for deliberate indifference, you have to show he was subjectively aware. Like, I know this is the wrong thing to do, and I'm just doing it anyway, maybe because ka-ching. So what's the record evidence from which a jury could make that finding? Based on the fact that there were repeated and repeated instances of Mr. Banks requesting treatment for both his concussion. Do you see, here's the problem. You have a very sympathetic case, but lots and lots, there are lots and lots of cases out there, and it can't be the rule that if you ask many times, that's enough for deliberate indifference, because then everybody would have a deliberate indifference claim, and this is supposed to be pretty narrow. The deliberate indifference standard, as you mentioned, Your Honor, it doesn't require intent. It requires a reckless disregard for the health of the inmate. No, I don't think so. It requires that you have subjective awareness, and sometimes if it's 1,000% obvious, you can infer the person must have been aware. But you need that subjective awareness of risk. So where is a jury finding that here? Within the grievances, Your Honor. Mr. Banks, again, was presenting with a concussion. He went to the medical unit stating that he had fallen on a metal bench and that he had caught that fall basically with his head. He was bleeding from his head. He was complaining of nausea, vomiting, hearing loss, dizziness, all symptoms of a concussion. And to train medical professionals such as the defendants, when a patient is presenting with a head wound and symptoms that would lead somebody to think, well, maybe this man is suffering from a head injury, the staff should have realized that Mr. Banks had a concussion, and he was actually diagnosed with a concussion later on, and still he was not provided with treatment. Oh, it was a severe concussion. It was a severe concussion, right, counsel? Yes. Is that correct? And also, when was the first time that an independent physician recommended him for counsel? When was that? Well, he was diagnosed with a concussion five days later. I'm asking you the record. When was he first recommended by a physician to have a neuro consult? They were trying to get it from Dr. Gore. He didn't approve it. When was that? It's science, but go ahead. I want to give you an idea. Being symptomatic that long after the onset, which was the fall, is very important in medical diagnosis because the point is this, you don't have to wait another three months. If that many months after the fall, you're still actively symptomatic. So you have a physician who had made a diagnosis. And when was that? On page 161 in the second amended complaint, Mr. Banks alleges that his fall occurred. No, no, no. I'm just trying to get you this. I'm trying to get the delineation. The point is there's a lot of power. First of all, you have a client who didn't get a chance to have discovered at all. You know, Dr. Gore gives an affidavit, I guess, like the counsel said. You've got to believe it. I guess so. There's nothing else to believe. Nothing is the record. It's like a self-fulfilling prophecy. But you do have here, unlike just in most cases the lone person crying in the forest, you have three independent physicians who must have made a diagnosis, did things clinically, saw him, and said he needs a consult. And the point you should be making is that that long after the onset, which is the fall, and you're still symptomatic, is important to that. And then to say that, and a jury could find that there's deliberately indifference and say, you knew at this first consult it had been that many months and weeks since the fall, and he's still active. I don't know if any neurologist would say, you know, you come to them, your private citizens and the people who have rights, and you say, you know, I fell, you know, in the bathtub, bumped my head seriously on a metal bench. The doctor said, you mean to tell me you still have blurred vision? Goodness. Get you an MRI. Get you a CT. Everybody knows that. But somehow when you're a prisoner, let's wait and see. But another physician says the same thing. And then another one says, then finally, well, let's wait four more months. What are we waiting for? Counsel, you need to pay attention. Yes. But that's what you should be arguing, shouldn't you? This is a record. It's not just sympathy. It's a matter of justice. Right? That's right. All right. Do you have anything last to say? Can I just ask one last question? Go ahead. Is there any – can I just sort of ask you the same question as to Nurse Smith? Is there anything in the record from which a jury could find that Nurse – am I saying – is it Nurse Smith? Is that the right question? Yes. That Nurse Smith had anything to do with the dialysis decision? I mean, she said, it's not me. I don't run dialysis. That's some outside consultant who comes in and does that. Is there anything in the record that would allow a jury to find that she was deliberately indifferent? Well, it's actually unclear from the record, Your Honor, the relation between what defendants describe as the independent consultant within the prison who administered the dialysis. But once you have Nurse Smith on the record saying, I had nothing to do with this, I'm asking is there any contrary evidence in the record that would allow – could a jury say, well, she said that, but X, and I think X is more persuasive. What's the X? Yes, Your Honor, in that Nurse Smith was the head nurse within the facility, so she should have had knowledge of all medical treatments being administered within. And Mr. Banks actually claims that Nurse Smith was responsible for terminating his dialysis on several occasions. Okay. And I would like to make one – I know I'm out of time. Sure, sure. Just one more point. Related to what defendants say was a concession that the Harvoni treatment mentioned within the – You have permission to go ahead. Sorry. Sorry, Your Honor. With relation to what the defendants say, we conceded that there was no exhaustion to that point. What I was referring to is that it was not exhausted to level two of the Virginia Department of Corrections grievance procedures, but under the precedent established in Ross, that it could still be excused as exhaustion. That's what I thought you said. Yes, Your Honor. Thank you so much. Mr. Rosenberg, I want to note that you were caught upon at the assignment, and I want to thank you for that because it's no way we can do our work without the able panel lawyers who do that. And Ms. Rave, if you would stand up. I just want to say this. I echo what your colleague said. You did an incredible job. You were under fire. You had poise. And what's your school? West Virginia. West Virginia. The Mountaineers. You are well represented today. You've acquitted yourselves on this snowy day. I want to thank you so much for your fine job you've done here today, and Office of Counsel for representing the Commonwealth and your clients as well. We're going to come down, greet counsel, and proceed to our next case. Thank you. You did a great job. You really did. I would have fallen apart on a 30-year lawsuit.
judges: Roger L. Gregory, Albert Diaz, Pamela A. Harris